1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUBEN M. MEDILLIN, | ) | 1:05cv0572 AWI DLB |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Ruben M. Medillin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for Findings and Recommendation to the District Court Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his application for disability insurance benefits on January 18, 2002, alleging disability since July 31, 2001, due to weight loss, hepatitis C, cirrhosis of the liver, high

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

blood pressure, diabetes, asthma, exhaustion, leg cramps, jaundice, swelling in his legs, hands and abdomen, abdominal pain, severe headaches and back pain.  AR 73-76, 86-95.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 55-58. 63-67. 68-71.  On October 30, 2003, ALJ Michael J. Haubner held a hearing.  AR 36-51.  On June 8, 2004, ALJ Haubner determined that Plaintiff was not disabled.  AR 14-24.  On February 23, 2005, the Appeals Council denied Plaintiff's request for review.  AR 6-9.

Hearing Testimony

ALJ Haubner held a hearing on October 30, 2003, in Fresno, California.  Plaintiff appeared with his attorney, Gina Fazio.

Plaintiff testified that he was born in 1957 and completed the tenth grade.  He did not get a GED.  He previously worked as a hospital housekeeper.  AR 42.

Plaintiff testified that he was not currently drinking alcohol and last had alcohol in July 2000.  He also denied drug use and said that the last time he did drugs was 15 years ago.  AR 43.  Plaintiff lives alone and can take care of his personal needs.  AR 43.  He does not have a driver's license and gets a ride from friends or family when he needs to go somewhere.  He does not ride the bus.  AR 44.  He takes all of his medication when he is supposed to and does not use anyone else's medication.  AR 44.

When questioned by his attorney, Plaintiff testified that he last worked in 2001 but had to stop because of back pain and tiring easily.  AR 44.  Plaintiff has pain in his lower back.  He does not get up until the afternoon because he his tired.  During the day, he lays down.  He does not do housework, his sister does it sometimes.  AR 45.  He does not do yardwork and watches television once in a while.  He lays down for about 10 hours during the day and sleeps for about 12 hours out of a 24 hour period.  AR 45.  He only lays down during the day- he does not cook, walk, exercise or shop.  AR 46.  His niece cooks for him.  AR 46.  He does not do the laundry because he sleeps most of the time and is too tired.  AR 47.  His sister or his niece do the laundry.  AR 47.  His friends come over and visit about once a week, but he does not go visit them.  He testified that he does not leave the house.  AR 47.

1    The ALJ asked him if he goes to the market and he responded, "No."  AR 46.  When

2    questioned again, Plaintiff admitted that he goes to the market once or twice a month, on average.

3    AR 46.  The ALJ also asked him if he ever did simple meal preparation and he admitted that he

4    does it maybe once a day.  AR 47.  He does not clean up after himself, take out the trash, push a

5    broom or vacuum.  AR 48.  He does not read.  AR 48.

6    Plaintiff testified that he had headaches everyday.  He takes pain pills and they relieve the

7    headaches.  He has no problems with his medications.  AR 48-49.  He testified that he also has

8    problems with his eyesight.  AR 49.  He saw a doctor for his eyesight, and the doctor told him

9    that it would get better as time went on.  He has been using a cane since Dr. Melashenko gave it

10   to him, about a month ago.  AR 49.  He uses the cane because it is hard for him to get up and

11   move around.  AR 49.  When the ALJ asked Plaintiff what he did all day, he replied that he lays

12   in bed and stares at the ceiling.  AR 50.  Plaintiff stated that he was depressed and couldn't move

13   around like he used to.  AR 50.

14       Medical Record

15   In 1989, Plaintiff had a motorcycle accident and fractured his right knee.  He underwent

16   an open reduction and internal fixation of the right patella.  AR 400.  A few months after the

17   surgery, Plaintiff had no complaints of knee pain.  AR 394.  While recovering from his knee

18   surgery, he developed nerve compression secondary to using a crutch.  AR 392-396.  On

19   November 14, 1989, Michael N. Baker, M.D., wrote a letter indicating that neurophysical studies

20   on the same date showed some abnormalities, but there was no evidence of an acute or chronic

21   C4 through T1 radiculopathy on the right at that time.  The median nerve was within normal

22   limits, but the right radial nerve demonstrated apparent plexus lesion.  AR 387.

23       An April 2, 2001, abdominal ultrasound showed an enlarged liver and spleen, and

24   thickening of the gallbladder walls.  AR 373.

25       On April 5, 2001, Plaintiff went to Central Valley Primary Care complaining of stomach

26   pain and vomiting and indicating that he had been to the emergency room a few days prior.

27   Plaintiff admitted to a history drinking alcohol daily.  His liver function blood tests were elevated

28

and he was diagnosed with hepatitis B and C, cirrhosis of the liver and hypertension.  Plaintiff was referred to a gastroenterologist and advised to continue his medications.  AR 138.

On May 30, 2001, Plaintiff saw Alvin Y. Au, M.D., at Advanced Digestive Medical Center.  Plaintiff reported a history of IV drug abuse about 10 years ago and heavy drinking for the past 30 years.  He reported that he stopped drinking about three months ago when he found out he had liver problems.  Plaintiff smokes about a half-pack a day.  On examination, Plaintiff's blood pressure was 122/86, and his abdomen was benign with mild tenderness to palpation at the right upper quadrant.  Dr. Au's impression included chronic hepatitis C infection on top of alcoholic liver disease with tender liver.  Dr. Au wanted to rule out chronic gall-bladder dysfunction, although Plaintiff reported that an ultrasound was normal.  AR 143-144.

Plaintiff saw Lawrence Milne, M.D., for a preoperative examination on July 23, 2001.  He had mild tenderness in the right upper abdominal quadrant and his abdomen was not distended.  AR 245-246.

Plaintiff underwent chest x-rays on July 30, 2001.  The test revealed clear lungs, unremarkable heart and mediastinum and minor osteoarthritis of the spine.  AR 253.

On August 1, 2001, Plaintiff had gall-bladder surgery, which revealed chronic cholelicystitis and cholesterolosis, but no gallstones.  Plaintiff also had a liver biopsy which revealed chronic cirrhosis of undetermined etiology.  AR 244, 250.

Plaintiff saw Dr. Au on August 29, 2001.  Plaintiff reported a 27-year history of drinking a 12 pack of beer or more a day.  AR 142.  Plaintiff's blood pressure was within normal range and his abdomen was benign and nontender.  He assessed Plaintiff with cirrhosis most likely due to chronic hepatitis C and alcoholism.  AR 142.

On October 4, 2001, Plaintiff went to the emergency room at the Hanford Community Medical Center, complaining of numbness on the left side of his face.  AR 232.  A CT scan of his head was negative and a chest x-ray was normal.  AR 233, 239.  He was diagnosed with transient ischemic attack, most likely the result of diabetes and high blood pressure.  AR 315.  He was released after a few hours of observation.  AR 233-234.

1   Plaintiff saw Dr. Au on October 25, 2001, and indicated that he was more tired than

2   usual.  His epigastric pain and right upper quadrant pain was resolved after

3   laparoscopiccholecystecmony.  AR 141.  Dr. Au assessed cirrhosis due to chronic hepatitis C

4   from alcoholism and ordered hepatitis C testing.  Depending on the results, Dr. Au planed on

5   treating Plaintiff with new pegylated interferon plus Ribavirin.  AR 141.

6   Plaintiff returned to Dr. Au on December 20, 2001, complaining of being weak and tired

7   and having soreness in the right upper quadrant.  His abdomen was benign and nontender.  Dr.

8   Au diagnosed abnormal liver function, most likely chronic hepatitis C.  A prior hepatitis C test

9   was not performed correctly, so Dr. Au ordered another.  AR 140.  There are no further records

10   from Dr. Au.

11   Plaintiff saw Zaky Z. Moussa, M.D., for a comprehensive internal medicine examination

12   on April 16, 2002.  Plaintiff's chief complaint was that he gets tired and falls asleep often at

13   work.  Plaintiff reported that he stopped drinking one year ago and that he hadn't used heroin in

14   15 years.  On examination, his abdomen was soft.  Range of motion was within normal limits in

15   his cervical spine and back, and he was able to toe, heel and tandem gait without difficulty.

16   Range of motion was within normal limits in his shoulders, elbows, wrists, hands, hips, knees

17   and ankles.  Neurologically, Plaintiff had good tone bilaterally, good active motion and muscle

18   strength of 5/5 in all extremities.  Dr. Moussa diagnosed diabetes without physical evidence of

19   complications, hypertension that was well controlled with medications, and hepatitis C with

20   cirrhosis and eligible for treatment with potential for cure.  Dr. Moussa opined that based on a

21   review of Plaintiff's history, records and physical examination, Plaintiff could perform full time

22   work with normal breaks.  He explained that Plaintiff's hepatitis C was manageable with

23   treatment, and that there was no evidence of coagulopathy, jaundice or liver cell failure to

24   explain Plaintiff's symptoms.  He further opined that Plaintiff was exaggerating his symptoms

25   compared with the physical and records findings.  AR 148-150.

26   Plaintiff underwent lumbar spine x-rays on April 19, 2002.  The x-rays revealed disc

27   degeneration at L4-5 and more severely at L5-S1.  AR 312.

28

1          On May 10, 2002, Plaintiff went to the Veterans Administration Center ("VA") for

2    treatment of hepatitis C, depression, insomnia, diabetes mellitus and anxiety.  AR 177-180.  He

3    reported that he had not used alcohol for the past 12 months, but continued to smoke a half pack

4    of cigarettes a day.  Plaintiff was referred to the hepatitis C program and mental health clinic.

5    The psychiatric nurse case manager interviewed Plaintiff, and he stated that he thought about

6    suicide, but was not suicidal at the time.  AR 175.  He revealed that he used heroin from ages 17

7    to 28, and stopped on his own.  He had no history of prior psychiatric treatment, inpatient or

8    locked-unit treatment, psychotropic medication or psychotherapy.  He had been incarcerated for

9    periods of one to two years at a time, five or six times, and had more than 20 DUIs.  AR 175.  He

10   reported that he didn't have a driver's license and no longer drove.  He reported that he had

11   difficulty sleeping, although he slept eight hours a day, and was angry and sometimes isolative.

12   AR 175.  Plaintiff had a broad, very friendly affect.  AR 175.

13         On May 30, 2002, Plaintiff was examined by orthopedist W. Timothy Brox, M.D.

14   Plaintiff complained of low back pain that had worsened in the last few months.  On

15   examination, Plaintiff was able to walk on his toes and heels.  There was no evidence of muscle

16   spasm along his spine, but range of motion was 66% reduced in the cervical spine and reduced in

17   the lumbar spine.  Plaintiff had no pain with knee or hip rotation.  Motor strength was 5/5 in the

18   upper and lower extremities.  He had positive straight leg raising in the right leg with positive

19   Laseque's maneuver.  Sensation in the upper extremities was intact, but sensation in the lower

20   extremities was difficult to measure due to numbness on the dorsum of the foot.  Dr. Brox

21   assessed right leg sciatica and lumbar spondylosis.  He indicated that Plaintiff's prognosis was

22   poor and that he was not a candidate for surgery.  Dr. Brox recommended an MRI, a course of

23   physical therapy and continuation of his medications.  AR 155-157.

24         Plaintiff had an MRI of his lumbar spine performed on June 14, 2002.  The MRI revealed

25   a disc protrusion at L5-S1 that could be the source of Plaintiff's right sided radiculopathy.  AR

26   228-229.

27         Plaintiff saw VA psychiatrist Bich-Thuy T. Pham, M.D. on June 20, 2002, for a

28   psychiatric assessment.  Plaintiff reported a history of drinking since the age of 9 or 10, until a

year ago, and a history of heroin abuse from the ages of 17 to 28.  During his examination, he sat and walked without difficulty.  His mood was depressed and frustrated, and his affect was mostly restricted.  Dr. Pham assessed chronic adjustment disorder with depressed mood, alcohol dependence, in remission, and rule-out depression, not otherwise specified.  AR 169.  Plaintiff was given Paxil and Trazodone.  AR 170.

On June 21, 2002, Plaintiff returned to Dr. Brox for a follow-up appointment.  Plaintiff reported that his symptoms persisted, his medication did not help, and that physical therapy made him worse.  Dr. Brox assessed right L5-S1 disk prolapse and recommended that although Plaintiff was "not a great candidate," he should be considered for surgical intervention.  Dr. Brox indicated that he could not offer him anything further and referred him to a spine surgeon.  AR 154.

On July 23, 2002, Plaintiff met with VA nurse practitioner Marcella Nole and discussed obtaining clearance from Dr. Gill in the psychiatric unit prior to beginning interferon treatment.  AR 159.

Plaintiff went to the emergency room at the Hanford Community Medical Center on August 13, 2002, complaining of chest pain and shortness of breath.  AR 185.  His blood sugar was very low and he felt better after treatment and a snack, although his chest pain continued.  AR 189.  He was admitted and testing ruled out a myocardial infarction.  A chest x-ray was negative, but showed mild degenerative changes of the thoracic spine with osteophyte formation with no significant changes from the examination of October 4, 2001.  AR 207, 330.  He was diagnosed with unspecified chest pain and discharged in excellent condition.  AR 184, 185.

On August 22, 2002, Dr. Melashenko completed a questionnaire in which he opined that Plaintiff was precluded from working, even at the sedentary level, due to his lumbar disc disease, active hepatitis C, non-insulin dependent diabetes, and rheumatoid arthritis.  Dr. Melashenko had been treating Plaintiff since at least 2001.  AR 262-270.  He opined that Plaintiff could sit in 1/2 hour stretches and walk for 15 minutes before needing to sit or lay down.  Dr. Melashenko based his opinion on Plaintiff's "response."  He noted that Plaintiff had problems with stress and was seeing a psychiatrist.  He also stated that Plaintiff had a diagnosis of rheumatoid arthritis based

on positive rheumatoid factor.  Plaintiff could lift five pounds frequently and 10 pounds occasionally, could reach for 10 to 15 percent of the workday, handle for 20 percent, feel for 20 percent, push and pull 5 to 6 percent, and grasp for 5 percent.  He could reach for 10 to 15 minutes at a time, handle for 10 to15 minutes, feel for 15 minutes, push and pull for 15 minutes, and grasp for 10 minutes.  Dr. Melashenko opined that these restrictions existed since August 2001.  AR 259-260.

      On November 22, 2002, State Agency physician Brian Ginsburg, M.D., completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk about six hours in an eight hour day, could sit for about six hours in an eight hour day, and was unlimited in pushing/pulling.  He could occasionally climb, balance, stoop, kneel, crouch, and crawl.  AR 291-298.

      On December 6, 2002, State Agency physician Glenn Ikawa, M.D., completed a Psychiatric Review Technique form.  He opined that Plaintiff's alleged affective disorders (adjustment disorder with depressed mood) and substance abuse were not severe for the requisite 12 month period through June 2003.   AR 274-287.

      Beginning on March 28, 2003, and continuing through June 4, 2003, Plaintiff was treated at Central Valley Family Health Center for vision problems that resolved when his blood pressure was brought back under control.  AR 367-371.

      An April 10, 2003, x-ray of Plaintiff's lumbar spine showed mild degenerative arthritis of the lumbosacral spine.  AR 374.

      Plaintiff saw Michael S. Barnett, M.D., for a psychiatric evaluation on July 10, 2003.  Plaintiff reported that his wife left him in November 2002, but that his girlfriend of five months, her daughter, and her daughter's four children now live with him.  AR 301.  Plaintiff complained that he couldn't function anymore, that he is very irritable, easily frustrated, and that he has gotten worse since 2001 when he stopped working.  He also reported difficulty sleeping.  Plaintiff reported that he had been arrested eight times for alcohol, but had never been in prison.  On mental status exam, Plaintiff was easily frustrated and slow, but was not in acute psychic

distress.  Dr. Barnett thought Plaintiff may be exaggerating his symptoms.  His mood was depressed and his affect was blunted.  There were auditory hallucinations, but Dr. Barnett felt these symptoms were confabulated.

Dr. Barnett diagnosed depressive disorder, not otherwise specified, alcohol abuse, question of current, polysubstance abuse, in remission, question of current abuse of pain medication, rule out psychotic disorder, not otherwise specified.  He explained that there were certain elements of Plaintiff's history that made him suspicious of malingering or substance-abuse effects on his presentation.  Dr. Barnett indicated that there may be underlying depression secondary to his physical problems and treatment with a sedating antidepressant may be beneficial.  He opined that Plaintiff could have difficulty understanding and remembering simple work-related instructions and tasks, would not be able to sustain focused attention and concentration long enough to complete routine work-related tasks in a timely and appropriate way, and would need special or additional supervision in doing so.  He would have difficulty interacting independently, appropriately and effectively with coworkers, supervisors and the public.  He would have difficulty adapting to changes, hazards or stressors in the work environment.  Plaintiff's prognosis was poor.  AR 301-303.

Plaintiff saw Dr. Melashenko on August 25, 2003, complaining of weight loss, not feeling well and sleeping a lot.  The clinical findings were all within normal limits.  Dr. Melashanko ordered laboratory tests.  AR 363.

Plaintiff returned to the emergency room on September 7, 2003, complaining of right upper quadrant flank pain.  Plaintiff's pain improved without medication.  AR 311.  The doctor opined that Plaintiff's ongoing hepatitis C was probably not the cause of his pain.  He assessed abdominal pain of unclear etiology.  AR 311.

On December 13, 2003, James A. Nowlan, Jr., M.D., performed a comprehensive internal medicine examination.  Plaintiff appeared anxious.  He walked with a cane, but quite rapidly.  Plaintiff complained of pain no matter where Dr. Nowlan touched him.  Every touch caused pain, but without any particular response.  AR 382.  Motor strength was 2/5 throughout the bilateral upper and lower extremities, but Dr. Nowlan did not believe that Plaintiff was exhibiting

maximum effort because when he did other things, he was able to move quite rapidly and shift his weight without difficulty.  AR 382.  He diagnosed diabetes mellitus, cirrhosis of the liver, hypertension and muscle pains.  He opined that Plaintiff could stand and/or walk for four to six hours in an eight hour workday, and that this would be limited mainly due to Plaintiff's subjective complaints of pain.  His sitting was unlimited.  Plaintiff did not require the use of an assistive device, despite the fact that he used a cane.  The amount of weight Plaintiff could lift was difficult to evaluate because Plaintiff did not cooperate with the evaluation of his strength. He had no postural or manipulative limitations.  AR 382.  Ultimately, Dr. Nowlan indicated that Plaintiff was capable of lifting and carrying 20 pounds occasionally, 10 pounds frequently.  AR 375.

On April 6, 2004, Dr. Nowlan wrote a letter to ALJ Haubner explaining that Plaintiff had not complained of knee pain during the December 2003 examination, but that Plaintiff reported a fractured knee fifteen years prior.  AR 386.  Dr. Nowlan indicated that if Plaintiff did have a prior knee surgery, it would not affect his prior RFC finding as there were no limitations produced by his knee.  AR 386.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of cirrhosis of the liver and a history of polysubstance abuse.  The ALJ further found that Plaintiff's hepatitis C, diabetes mellitus and depression were only slight impairments that had minimal, if any, effect on his ability to work.  The ALJ determined that Plaintiff was not a credible source.  However, Plaintiff retained the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally, 10 pounds frequently, and occasionally stoop, crouch, kneel, crawl, climb and balance.  Although Plaintiff could not perform his past relevant work, he could perform a significant number of jobs in the national economy.  The ALJ further determined that Plaintiff's non-exertional impairments did not significantly affect his ability to perform a broad range of light, unskilled work.  AR 20-21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

1  the Court must determine whether the decision of the Commissioner is supported by substantial

2  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

3  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

4  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

5  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

6  401.  The record as a whole must be considered, weighing both the evidence that supports and

7  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

8  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

9  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

10  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

11  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

12  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

13  Cir. 1987).

14  <u>**REVIEW**</u>

15      In order to qualify for benefits, a claimant must establish that he is unable to engage in

16  substantial gainful activity due to a medically determinable physical or mental impairment which

17  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

18  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

19  such severity that he is not only unable to do her previous work, but cannot, considering his age,

20  education, and work experience, engage in any other kind of substantial gainful work which

21  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

22  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

23  Cir. 1990).

24      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

25  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

26  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2]  Applying this process in this case, the ALJ

27

28      [2]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

his disability; (2) has an impairment or a combination of impairments that is considered "severe"

(cirrhosis of the liver and a history of polysubstance abuse) based on the requirements in the

Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of

impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

Regulations No. 4; and (4) could not perform his past relevant work; but (5) retains the RFC to

perform a significant number of jobs in the national economy.  AR 20-21.

Plaintiff argues that (1) substantial evidence does not support the ALJ's decision; (2) the

ALJ did not properly evaluate Plaintiff's credibility; and (3) the ALJ did not properly develop the

mental health record.

### DISCUSSION

A.   Substantial Evidence

Plaintiff asserts that substantial evidence does not support the ALJ's decision for three

reasons: (1) the ALJ failed to consider all of Plaintiff's impairments; (2) the ALJ did not properly

consider the opinion of Plaintiff's treating physician; and (3) the ALJ failed to provide Plaintiff

with an opportunity to cross-examine the consultive examiner.

1.   Plaintiff's Impairments

Plaintiff contends that the ALJ passed over the second and third steps of the sequential

evaluation process "without any true consideration of the problems from which Plaintiff suffers,"

either individually or in combination.  Opening Brief, at 4-5.  Plaintiff faults the ALJ for finding

a "history" of drug and alcohol addiction and contends that it permeates the decision making.  He

further argues that the ALJ failed to consider Listing 5.05, and that he failed to consider

Plaintiff's lumbar disc prolapses and degeneration, diabetes, rheumatoid arthritis, and history of

right knee fracture.  Plaintiff argues that these impairments, in combination, render him disabled.

At the second step of the sequential evaluation of disability, the ALJ determines whether

a claimant has a severe impairment or combination of impairments.  A severe impairment is one

that significantly limits the claimant's physical or mental ability to do basic work activities.  20

C.F.R. § 1520(c).  An impairment or combination of impairments is found "not severe" and a

finding of "not disabled" is made at this step when medical evidence establishes only a slight

abnormality or a combination of slight abnormalities which would have no more than a minimal

effect on an individual's ability to work, even if the individual's age, education, or work

experience were specifically considered (i.e., the person's impairment(s) has no more than a

minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

SSR 85-28.

At step three, the ALJ considers whether an impairment or combination of impairments

meets or equals the listings of impairments.  The listings of impairments describe impairments

"that are considered severe enough to prevent an adult from doing any gainful activity."  20

C.F.R. § 416.925(a).  Most of these impairments are permanent or expected to result in death.  *Id.*

For all other impairments, the evidence must show that the impairment has lasted or is expected

to last for a continuous period of at least 12 months.  *Id.*  If a claimant's impairment meets or

equals a listed impairment, he or she will be found disabled at step three without further inquiry.

20 C.F.R. § 416.920(d).

Here, the ALJ found that Plaintiff had the severe impairments of cirrhosis of the liver and

a history of polysubstance abuse.  AR 17.  Insofar as Plaintiff contends that a "history" is not an

impairment because "it is not current," he is undermining his own cause by questioning a finding

in his favor.  In any event, a history of an impairment can be considered severe where, as here, its

continuing manifestations significantly limit the claimant's physical or mental ability to do basic

work activities.  Plaintiff suggests error because his history of substance abuse "permeates" the

decision, but this argument ignores the fact that his substance abuse was a significant contributor

to his physical impairments and is included in a majority of the medical records.  In fact, the

ALJ's decision would have been incomplete had he simply mentioned this issue rather than fully

analyzing it.

Plaintiff's argument that the ALJ failed to consider Listing 5.05, which involves

impairments of the liver, also fails.  Contrary to Plaintiff's assertion, the ALJ specifically found

that Plaintiff failed to prove that his cirrhosis met or equaled the criteria under any of the listings.

AR 17.  Under the law of this circuit, "[i]t is unnecessary to require the Secretary, as a matter of

law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990).

Moreover, the evidence simply does not support Plaintiff's contention. Although Plaintiff points to the biopsy that confirmed cirrhosis, his hepatitis C, positive LFT results, cramping, fatigue, and a transient ischemic attack despite "considerable care attempts such as two different courses of Interferon medications," there is no evidence to support a finding that his liver impairment met or equaled the strict medical requirements of Listing 5.05. For example, confirmation of chronic liver disease by liver biopsy may satisfy the listing when one of the following is present:

> 1. Ascites not attributable to other causes, recurrent or persisting for at least 3 months, demonstrated by abdominal paracentesis or associated with persistent hypoalbuminemia of 3.0 gm. per deciliter (100 ml.) or less; or
> 2. Serum bilirubin of 2.5 mg. per deciliter (100 ml.) or greater on repeated examinations for at least 3 months; or
> 3. Hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction.

The evidence simply does not demonstrate facts to support Plaintiff's argument. In fact, although Plaintiff contends that he was treated with two courses of Interferon, the evidence only shows that Interferon was recommended and that Plaintiff needed to undergo a psychiatric evaluation prior to such treatment. AR 141, 159. The reviewing State Agency physician determined that Plaintiff's impairments did not meet or equal any listing, and the ALJ was entitled to rely on this finding given the state of the medical evidence. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (the opinion of a nontreating, nonexamining physician may be substantial evidence where based on, and consistent with, other substantial evidence of record).

Plaintiff correctly states that when a claimant suffers from multiple impairments, the Commissioner must consider their combined effect without regard to whether any such impairment, if considered separately, would be of sufficient medical severity, in determining whether the claimant is disabled. *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir.1988), *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987). Contrary to Plaintiff's suggestions, the ALJ *did*

1  review Plaintiff's other impairments and was correct in concluding that they were not severe,

2  either alone or in combination.  AR 18-20.

3     Plaintiff points to his lumbar disc disease, diabetes, rheumatoid arthritis and a history of

4  right knee fracture[3] as impairments that combine to cause a severe impairment.  While the ALJ

5  did not directly address Plaintiff's lumbar disc disease, the evidence before him supported a

6  finding that it did not result in any significant limitations.  *Batson v. Comm'r Soc. Sec.*, 359 F.3d

7  1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the

8  ALJ's ultimate conclusion).  Although consultive examiner Dr. Brox found decreased range of

9  motion in his cervical and lumbar spine, he did not assess any limitations.  AR 155-157.  Indeed,

10  consultive examiner Dr. Moussa examined Plaintiff and found a normal range of motion in his

11  spine.  AR 150.  He also opined that Plaintiff was exaggerating his symptoms and was capable of

12  full time work.  AR 150.  Finally, Dr. Nowlan opined that Plaintiff was capable of performing

13  basic work activities at the light level and had no medical reason for using a cane.  AR 375-383.

14     As to Plaintiff's diabetes, rheumatoid arthritis and prior right knee fracture, the ALJ

15  reviewed the medical evidence regarding these ailments and determined that they were not

16  severe.  AR 18-20.  As the ALJ found, Plaintiff's diabetes was controlled by medication, and

17  although he had an instance of low blood sugar, his diabetes did not cause any significant

18  limitations.  AR 231, 148-150, 375.  Similarly, although Dr. Melashenko noted that Plaintiff had

19  rheumatoid arthritis as evidenced by a positive rheumatoid factor, there was no evidence of any

20  such laboratory findings in the record.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ

21  may reject fill-in-the-blank, check-off forms that are unsupported).  Nor was there any evidence

22  of any resulting limitations.  Finally, Plaintiff's allegation that his prior knee fracture resulted in

23  any ongoing limitations is completely unsupported.  Plaintiff's doctor granted temporary

24  disability though October 15, 1989, to allow Plaintiff to recuperate from his surgery.  AR 402-

25  404.  Plaintiff returned to work and had substantial earnings from 1990 through 2000, with the

26

27     [3] It is interesting that in the previous argument, Plaintiff stated that a "history" is not an impairment, yet in
the instant argument, alleges that his history of a right knee fracture, in combination with his other impairments, is
28  sufficient to find disability.  Plaintiff's contradictory arguments undermine his credibility.

exception of 1993 and 1994.  AR 78, 82.  Moreover, the ALJ followed-up with Dr. Nowlan

regarding Plaintiff's alleged knee problem, and Dr. Nowlan indicated that Plaintiff presented

with a normal right knee and did not complain of any knee problems.  AR 19-20.

2.      Treating Physician's Opinion

Next, Plaintiff argues that the ALJ did not properly consider Dr. Melashenko's opinion,

but does not further expand on his argument.

The medical opinion of a claimant's treating physician is entitled to "special weight."

*Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088

(9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only on the fact

that he is employed to cure but also on his greater opportunity to observe and know the patient as

an individual.  However, a treating physician's opinion is not conclusive as to a physical

condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v.*

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating

physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the

rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

In his decision, the ALJ reviewed Dr. Melashanko's August 22, 2002, questionnaire in

which he opined that Plaintiff was precluded from working, even at the sedentary level, due to

his lumbar disc disease, active hepatitis C, non-insulin dependent diabetes, and rheumatoid

arthritis.  AR 19, 259-260.  The ALJ first noted that the questionnaire was a fill-in-the-blanks,

check-blocks form, and that the accompanying treatment records were mostly illegible. *Crane*,

76 F.3d at 253 (ALJ permitted the reject fill-in-the-blank, check-off forms that are unsupported).

The ALJ further found that the opinion lacked support in the form of signs and test results, and it

was unclear whether the limitations were based on subjective complaints, objective findings or

observations.  AR 19.  Indeed, Dr. Melashenko states that he relied on "mainly [the] [patient's]

response" as objective findings in support of his opinion.  AR 259.  An ALJ may reject the

treating physician's opinion because it was based on the claimant's discredited subjective

complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d

597, 605 (9th 1989).  Additionally, a brief and conclusory form opinion which lacks supporting

clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Rather than rejecting the form outright, however, the ALJ gave Plaintiff an opportunity to submit clarification and additional information. AR 19. On May 16, 2003, the ALJ wrote Plaintiff's counsel a letter setting forth the deficiencies in Dr. Melashenko's opinion and explaining to Plaintiff that he can give the opinion greater weight if Plaintiff provides additional information. AR 122. The ALJ explained, in detail, the additional information that he needed. Despite this opportunity, Plaintiff failed to submit the requested information, and the ALJ afforded little weight to the opinion. AR 19.

The ALJ provided specific, legitimate reasons for rejecting Dr. Melashenko's opinion.

3.      Supplemental Hearing

Plaintiff next argues that the ALJ failed to provide him with an opportunity to cross-examine the consultive examiner. Plaintiff's argument is unclear, does not specify which consultive examiner Plaintiff wanted to cross-examine, and does not include any supporting case law. From the context of Plaintiff's argument and the documentation in the record, it appears that he is referring to Dr. Nowlan.

The Court recognizes that, under certain circumstances, a claimant should be permitted to cross-examine the author of submitted evidence. For example, in *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983), the court determined that where a physician is a crucial witness whose findings substantially contradict the other medical testimony, and when interrogatories are an inadequate substitute for cross-examination, the claimant will be denied procedural due process if his request to subpoena the physician is not granted. However, the court recognized that a claimant is not entitled to unlimited cross- examination, but rather "such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). *Id.* at 302; *see also Butera v. Apfel*, 173 F.3d 1049, 1057 (7th Cir. 1999) (observing that cross-examination is not an absolute right in administrative cases). The ALJ has discretion to decide when cross-examination is warranted. *Id.*

In a letter to the ALJ almost three months after the hearing, Plaintiff's attorney requested

a supplemental hearing to allow for cross-examination of Dr. Nowlan.  Mr. Milam explained that

a supplemental hearing was necessary so that Dr. Nowlan could be informed of Plaintiff's prior

knee surgery and include the information in his RFC finding.  AR 127.  In his response, the ALJ

first explained that Dr. Nowlan asked Plaintiff to state his complaints.  The ALJ next explained

that the request seemed "superfluous" in light of Dr. Nowlan's finding that Plaintiff had

essentially a normal range of motion in both knees.  AR 128.  The ALJ indicated that he would

follow up with Dr. Nowlan to determine if Plaintiff's knee surgery would change his opinion.

AR 128.  The ALJ denied Plaintiff's request to subpoena Dr. Nowlan because counsel failed to

fully comply with the requirements of HALLEX § I-2-578 B (1-4) for requesting a subpoena.

AR 128.  The ALJ also asked counsel to provide him with a copy of any report he had relating to

Plaintiff's 1989 knee surgery.  AR 128.

    The ALJ then wrote Dr. Nowlan and asked him questions regarding Plaintiff's knee

surgery and whether such surgery would change his RFC finding.  AR 130.  The ALJ copied both

Plaintiff and counsel.  AR 130.  Two weeks later, Ms. Fazio (Mr. Milam's co-counsel) wrote to

the ALJ indicating that she did not have a copy of the surgery report and setting forth the

questions she would ask Dr. Nowlan.  She explained that the issues could not be fully and fairly

determined without a "face-to-face questioning of the doctor," and that she would not fully know

what to ask him until the "questioning (and his answers) begin[s], similar to a case in court when

an expert is called to testify (here, by letter)."  AR 131.  Ms. Fazio also asked the ALJ to give

Plaintiff "every due process benefit."  AR 131.

    The ALJ denied Plaintiff's request because Plaintiff failed to provide any reason why the

outstanding questions could only be answered with face-to-face questioning.  AR 132.  The ALJ

found that the questions could be answered by additional means and denied the request.

    As explained above, a claimant is not entitled to unlimited cross-examination, and the

ALJ has discretion to determine if cross-examination is warranted.  Contrary to Plaintiff's

suggestion, there is no right to cross-examination at a disability hearing before an ALJ because

such hearings are not adversarial in nature.  20 C.F.R. §§ 404.950, 416.1450; *Flatford v.Chater*,

93 F.3d 1296, 1299-1301 (6th Cir. 1996) (due process does not require the Commissioner to

1  allow every claimant upon request to cross-examine every physician providing post hearing

2  evidence).

3      The ALJ's denial of Plaintiff's request was certainly a reasonable exercise of his

4  discretion.  Given the evidence of Plaintiff's normal range of motion in his knees and the lack of

5  evidence to support limitations based on Plaintiff's knees, the ALJ correctly determined that

6  Plaintiff's request was superfluous.  In any event, the ALJ alleviated Plaintiff's concerns by

7  presenting Dr. Nowlan with the questions and submitting his responses into evidence.  AR 133-

8  134.  Dr. Nowlan stated in a April 6, 2004, letter that Plaintiff's history of right knee surgery had

9  no impact on his RFC finding.  AR 386.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

10  2001) (the ALJ may develop the record in many ways, including submitting questions to the

11  claimant's physicians).

12  B.      Plaintiff's Credibility

13      Plaintiff contends that the ALJ failed to provide any analysis of Plaintiff's testimony and

14  found him not credible without sufficient explanation.

15      The ALJ is required to make specific findings assessing the credibility of plaintiff's

16  subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting

17  the complainant's testimony, "the ALJ must identify what testimony is not credible and what

18  evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

19  1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

20  1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

21  severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

22  with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

23  discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

24      "The ALJ may consider at least the following factors when weighing the claimant's

25  credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

26  testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

27  record, and testimony from physicians and third parties concerning the nature, severity, and effect

28  of the symptoms of which [claimant] complains."  *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."  *Id.*

Contrary to Plaintiff's suggestion, the ALJ made very specific findings regarding his credibility.  The ALJ first explained that the degree of limitation alleged by Plaintiff was not supported by the medical evidence and was not credible when evaluated under SSR 96-7p.  AR 18.  During his review of the medical evidence, the ALJ cited Dr. Moussa's finding that Plaintiff was exaggerating his symptoms, compared to the examination and treatment records.  AR 18.  He also noted Dr. Barnett's suspicion that Plaintiff was either malingering or had substance-abuse effects in his presentation.  AR 18.  The ALJ may use "ordinary techniques" in addressing credibility.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ continued his evaluation of Plaintiff's credibility by examining the inconsistencies in Plaintiff's testimony.  AR 18.  For example, Plaintiff testified that he does not do any chores and does not go shopping, but when pressed by the ALJ, he admitted that he goes to the market once or twice a month and does single meal preparation once a day.  AR 18, 46-48.

The ALJ also examined the inconsistent statements regarding Plaintiff's drug and alcohol use.  AR 18.  Plaintiff told Dr. Barnett that he had done marijuana and cocaine, and had tried heroin "a few times."  AR 301.  In contrast, he told his treating physician that he used heroin between the ages of 17 and 28, but denied other drugs.  At the hearing, Plaintiff testified that he had not used street or recreational drugs in 15 years, but stated elsewhere that he had not used drugs for 10 years.  AR 43, 301.  Additionally, Plaintiff testified that he had not used alcohol since July 2000, but stated elsewhere that he had not used alcohol since May 2001.  AR 43, 173, 178, 301.  Certainly, the ALJ was entitled to consider Plaintiff's inconsistent statements in evaluating his credibility.  *Thomas,* 278 F.3d at 958.

Finally, the ALJ noted that Dr. Nowlan found Plaintiff to be uncooperative during examination, making it difficult to evaluate his ability to lift and carry objects.  AR 19.  *Thomas,*

1  278 F.3d at 959 (failure to give maximum effort on physical examinations is a factor the ALJ

2  may consider in assessing credibility).

3        The ALJ provided specific and legitimate reasons for finding him not credible.  Plaintiff's

4  argument is without merit.

5  C.     <u>Plaintiff's Mental Impairment</u>

6  _____Finally, Plaintiff argues that the ALJ failed to fairly review and credit the mental health

7  record.  He further argues that the ALJ should have ordered another consultive examination prior

8  to finding Plaintiff not disabled.

9        Insofar as Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Barnett,

10  his argument fails.  Like the opinion of a treating doctor, the opinion of an examining doctor,

11  even if contradicted by another doctor, can only be rejected for specific and legitimate reasons

12  that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043

13  (9th Cir.1995).  In rejecting Dr. Barnett's opinion, the ALJ explained that Dr. Barnett suspected

14  that Plaintiff was either malingering or had substance-abuse effects in his presentation.  AR 18.

15  Dr. Barnett explained that he was suspicious because Plaintiff was vague about the development

16  of his romantic relationship.  AR 303.  Indeed, Plaintiff reported that his depression was so

17  severe that he could not do anything and had a "bad" libido, yet he acquired a girlfriend during

18  this time and she moved in with him.  AR 301.  Dr. Barnett also questioned Plaintiff because his

19  self-reported auditory hallucinations did not match standard clinical criteria for true psychotic

20  and appeared to be "confabulated."  AR 302-303.  The ALJ was entitled to discredit Dr. Barnett's

21  report based on the doctor's skepticism.

22        Instead, the ALJ relied on the opinion of the State Agency physician, who found that

23  Plaintiff's mental impairments were not severe.  AR 274-287.  The ALJ noted that this was

24  consistent with the Global Assessment of Functioning score of 60 assessed by Plaintiff's treating

25  VA physician, Dr. Pham.  AR 18, 170.  The ALJ was entitled to rely on these assessments.

26  *Morgan v. Comm'r Soc. Sec*, 169 F.3d 595 (9th Cir. 1999), especially give the skepticism of Dr.

27  Barnett.

28

1      Finally, Plaintiff's suggestion that the ALJ should have ordered another consultive

2 examination is without merit.  The ALJ has a duty to develop the record only when the evidence

3 is ambiguous or the record is inadequate.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

4 Cir.2001).  The record is in this case is neither ambiguous nor inadequate.

5 **RECOMMENDATION**

6      Based on the foregoing, the Court finds that the ALJ's decision is supported by

7 substantial evidence in the record as a whole and is based on proper legal standards.

8 Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

9 of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

10 Defendant Jo Anne B. Barnhart and against Plaintiff Ruben M. Medellin.

11      These findings and recommendations will be submitted to the Honorable Anthony W.

12 Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after

13 being served with these findings and recommendations, the parties may file written objections

14 with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

15 and Recommendations."  The parties are advised that failure to file objections within the

16 specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

17 F.2d 1153 (9th Cir. 1991).

18      IT IS SO ORDERED.

19     **Dated:**    **May 30, 2006**                   **/s/ Dennis L. Beck**
    3b142a                                              UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28